IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ADHANOM DEBRU TESFAMARIAM, | § § § | |
| *Petitioner*, | § § § | No. 1:26-CV-00363-DAE |
| v. | § § | |
| NOEM, *et al.*, | § § | |
| *Respondents*. | § § | |

## ORDER

Before the Court is Petitioner Adhanom Debru Tesfamariam's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. # 1). The Court finds this matter suitable for disposition without a hearing. After careful consideration of the parties' briefings and the relevant law, the Court **GRANTS** the Petition for Writ of Habeas Corpus (Dkt. # 1) for the reasons that follow.

## FACTUAL BACKGROUND

Petitioner Debru Tesfamariam is a native and citizen of Eritrea[1] who is currently being detained at the T. Don Hutto Detention Center in Taylor, Texas.

---

[1] Respondents contend that Petitioner is a citizen of Ethiopia as well as Eritrea, but Petitioner asserts that this is incorrect. (See Dkts. ## 5 at 2; 7 at 1; 7-1 at 1.) Petitioner explains that although he was born in Ethiopia, he was forcibly deported

1

(Dkt. # 1 at 4.)  In January 2018, Petitioner applied for admission at the San Ysidro

port of entry and requested asylum.  (Dkt. # 5-1 at ¶ 4.)  Lacking valid entry

documents, Petitioner was detained and placed into expedited removal proceedings

under Section 235(b)(1) of the Immigration and Nationality Act ("INA").  (Id.;

Dkt. # 11 at 1.)

On May 23, 2018, at a hearing before an Immigration Judge,

Petitioner's asylum application was denied, and he was ordered removed from the

United States.  (Dkt. # 7-2 at 23.)  Petitioner waived his right to appeal, and the

Immigration Judge's order became final that same day.  (Id.; Dkt. # 5-1 at ¶ 8.)

Petitioner remained in immigration custody throughout his removal proceedings

and after the order of removal was entered.  (Dkt. # 11 at 2.)

On February 1, 2019, Immigrations and Customs Enforcement

("ICE") conducted a case review and decided to release Petitioner on bond.  (Dkts.

## 5-1 at ¶ 13.; 1-3 at 13.)  Since his release, Petitioner states that he has complied

with all the reporting requirements, electronic monitoring conditions, and

directives issued by ICE.  (Dkt. # 1 at 2.)  Petitioner has also maintained steady

employment, including work with Uber, Amazon, and UPS, and he has built ties

with the Eritrean and Ethiopian Orthodox communities in Austin, Texas where he

---

to Eritrea when he was approximately eight years old and is not an Ethiopian
citizen.  (Dkts. ## 7 at 1; 7-1 at 1.)

has volunteered his time and contributed to church and community support efforts. (Id. at 6.)

On July 8, 2025, ICE enrolled Petitioner in alternates to detention ("ATD") with GPS monitoring.  (Dkt. # 5-1 at ¶ 15.)  Although Petitioner alleges that he was in compliance with his electronic ankle monitoring requirements, (Dkt. # 1 at 4), Respondents assert that in September and October 2025, ICE noted that Petitioner damaged the GPS equipment and that they needed to inspect it, (Dkt. # 5-1 at ¶¶ 17–19).

Then, despite ICE's representations at Petitioner's most recent check-in that he would not be arrested, Petitioner was arrested at his residence on December 15, 2025.  (Dkt. # 1 at 7.)  Petitioner contends that this arrest took place with no warning and in spite of his full compliance with his supervision conditions. (Id. at 2.)  He was thereafter transferred to the T. Don Hutto Detention Center where he is being detained without the opportunity for a bond hearing.  (Id. at 1–3.)  Petitioner has no criminal history and no history of violence.  (Id. at 6.)  He brings this Petition to challenge his prolonged detention.

## PROCEDURAL HISTORY

On February 16, 2026, Petitioner filed his habeas petition.  (Dkt. # 1.) On February 20, 2026, this Court ordered Respondents Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); Todd Lyons, Acting Director,

Immigration and Customs Enforcement ("ICE"); Daren K. Margolin, Director, Executive Office for Immigration Review ("EOIR"); Sylvester M. Ortega, Director of Enforcement and Removal Operations, San Antonio Field Office, U.S. Immigrations and Customs Enforcement; and Charlotte Collins, Warden of the T. Don Hutto Detention Center (collectively, "Respondents") to show cause within three days as to why the petition should not be granted.  (Dkt. # 3.)  Respondents Kristi Noem, Todd Lyons, Daren K. Margolin, and Sylvester Ortega (herein, "Federal Respondents")[2] timely filed a response to the Petition on February 24, 2026, (Dkt. # 5), and Petitioner subsequently filed a Reply, (Dkt. # 7).

LEGAL STANDARD

A district court may grant a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.  The habeas petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."  Villanueva v. Tate, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (internal citation and quotations omitted).  "A court

---

[2] Respondent Collins, Warden of the T. Don Hutto Detention Center, has not joined the response.

considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

DISCUSSION

In his Petition, Petitioner argues that he is entitled to relief because (1) his prolonged detention is unlawful under Zadvydas v. Davis, 533 U.S. 678 (2001); (2) his mandatory detention without justification violates his procedural due process rights under the Fifth Amendment of the United States Constitution; and (3) Respondents' actions constitute unlawful agency action under the Administrative Procedure Act ("APA").  (Dkt. # 1 at 13–16.)  Because the Court finds that Petitioner's prolonged detention violates his Fifth Amendment substantive due process rights under Zadvydas, it does not reach his remaining bases for relief.

I.      Subject Matter Jurisdiction

As an initial matter, the Court finds that it has jurisdiction over this case for the reasons similar to those stated in previous orders.  Campuzano v. Noem, No. 1:25-cv-1715-DAE, 2026 WL 90062 (W.D. Tex. Jan 6, 2026); Fabian-Granados v. Bondi, No. 1:25-cv-2068-DAE, 2026 WL 90061 (W.D. Tex. Jan. 8, 2026); Silva v. Bondi, No. 1:25-cv-2155-DAE, 2026 WL 90060 (W.D. Tex. Jan. 12, 2026).  Here, Petitioner is challenging the lawfulness of his detention, not the validity of his underlying removal order.  (Dkt. # 1 at 1.)  Accordingly, the Court

5

has jurisdiction.  See Gurung v. Warden, S. Texas Ice Processing Ctr., No. SA-25-CA-01614-XR, 2026 WL 93145, at *3 (W.D. Tex. Jan. 6, 2026) (finding jurisdiction where the petitioner was challenging his prolonged detention after issuance of a final order of removal).

II.     The Merits of the Petition for Writ of Habeas Corpus

Having concluded that it has jurisdiction over Petitioner's claims, the Court turns to the merits of Petitioner's habeas petition.  The Court begins with Petitioner's Zadvydas claim.

When a noncitizen is ordered removed from the United States, the INA requires that removal occur within ninety days, during which time the noncitizen is typically held in custody.  8 U.S.C. § 1231(a)(1)(A); Zadvydas, 533 U.S. at 682.  The 90-day period generally begins on the date that the order of removal becomes final.  Id. at § 1231(a)(1)(B).  Under the INA, detention can extend beyond this 90-day period, but only in certain circumstances.  See Rodriguez Romero v. Ladwig, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *3 n.6 (M.D. La. Feb. 6, 2026) (listing those circumstances as: "If the noncitizen fails or refuses to apply in good faith for travel documents as directed by ICE (8 C.F.R. § 241.4(g)(1)(i)); if the noncitizen is inadmissible under 8 U.S.C. § 1182; or if the noncitizen has committed certain crimes, and the government determines that the noncitizen poses a risk to the community or is a flight risk (8 U.S.C.

6

§ 1231(a)(6))."). And, even under those circumstances, the government may not detain a noncitizen indefinitely. Zadvydas, 533 U.S. at 682, 689. In Zadvydas, the Supreme Court recognized a "presumptively reasonable" detention period of six months. Id. at 701. After that six-month period has elapsed,[3] continued detention is proper only when the noncitizen's removal is reasonably foreseeable. Id. at 699, 701.

In this case, Petitioner argues that his prolonged detention is unconstitutional under Zadvydas. (Dkts. ## 1 at 14; 7 at 6.) To establish a Zadvydas claim after the six months have run, a detained noncitizen need only "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. If they do so, "the Government must respond with evidence sufficient to rebut that showing." Id.

---

[3] That is not to say that detention before this six-month mark is necessarily reasonable. Indeed, as noted by other courts, Zadvydas creates a *presumption* that six months is a reasonable detention period, not a rule. Puertas-Mendoza v. Bondi, No. SA-25-CA-00890-XR, 2025 WL 3142089, at *2 (W.D. Tex. Oct. 22, 2025), judgment entered, No. SA-25-CA-00890-XR, 2025 WL 3142091, at *14 (W.D. Tex. Oct. 22, 2025); Rodriguez Romero v. Ladwig, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *13–14 (M.D. La. Feb. 6, 2026). A petitioner is thus able to bring a Zadvydas claim prior to this six-month period elapsing. Id. However, "a detained person who brings a Zadvydas claim before the presumptively reasonable six-month period has run will have a harder time establishing a right to relief." Puertas-Mendoza, 2025 WL 3142089, at *2. Here, though, the Court need not address whether Petitioner would succeed in making a pre-six-months Zadvydas claim because, as the Court later explains, Petitioner's period of post-removal order detention exceeds six months.

Federal Respondents first argue that Petitioner's Zadvydas claim is premature because he has not been detained for longer than six months.  (Dkt. # 5 at 4–5.)  But, when calculated properly, Petitioner's post-removal period of detention exceeds six months.  Here, after his removal order became final, Petitioner was detained for eight months and nine days.[4]  Then, after Petitioner was released in 2019, he was re-detained on December 15, 2025, and has been in custody an additional four months.  Because both of these detention periods took place after Petitioner's order of removal became administratively final, they count towards the Zadvydas calculation.  See Abuelhawa v. Noem, 811 F. Supp. 3d 847, 855–56 (S.D. Tex. 2025) ("Most courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated by a concern that the federal government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them."); Villanueva v. Tate, 801 F. Supp. 3d 689, 703 (S.D. Tex. 2025) (acknowledging some split in authority but concluding that Zadvydas does not "permit the government to indefinitely detain a noncitizen by the simple expedient of releasing and then re-detaining him in a series of 'presumptively constitutional' six-month increments"); Rodriguez Romero v. Ladwig, No. CV 25-

_____

[4] Petitioner was held in immigration custody from January 10, 2018, to February 1, 2019, a total period of one year and twenty-two days.  His removal order became final on May 23, 2018.  For purposes of its Zadvydas analysis, the Court's calculation of Petitioner's prior time in detention includes only this post-removal order detention, i.e. the period between May 23, 2018, and February 1, 2019.

1106-JWD-EWD, 2026 WL 321437, at *12 (M.D. La. Feb. 6, 2026) (collecting cases and noting that "[t]o consider only the current period of detention would be to allow the Government to indefinitely detain noncitizens through successive detentions, at direct odds with Zadvydas' protection against indefinite detention"); Garcia-Aleman v. Thompson, No. SA-25-CV-886-OLG (HJB), 2025 WL 3534806, at *4 (W.D. Tex. Nov. 24, 2025), report and recommendation adopted, No. SA-25-CV-00886-OLG, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025).  Therefore, even if Federal Respondents were correct that Petitioner could not bring a claim before the six-month period has run, Petitioner's claim is not premature.

Federal Respondents next argue that Petitioner's Zadvydas claim fails because there is no good reason to believe that removal is unlikely in the reasonably foreseeable future.  (Dkt. # 5 at 5.)  The Court does not agree.

In this case, Petitioner has shown that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.  Petitioner's order of removal became administratively final on May 23, 2018.  (See Dkt. # 7-2 at 23 (ordering Petitioner removed and Petitioner waiving his right to appeal).)  From that date until February 1, 2019—a period of over eight months—ICE officials worked to secure Petitioner's removal.  (Dkt. # 5-1 at 2.) Petitioner's travel packet was prepared and sent to "HQ RIO-Africa."  (Id.) However, after months of efforts, ICE made the determination to release Petitioner

on bond, presumably because removal could not be effectuated at that time.  (Id.; Dkt. # 1 at 10.)

From 2019 to late 2025, it appears that no further progress was made toward Petitioner's removal.  (See Dkt. # 5-1 at 2–3)  In August 2025, ICE seemingly re-started efforts to secure a travel document for Petitioner.  (Id.) However, in the over eight months since, Respondents have not received any update on their travel document request or the travel document itself.  (See id.)

Petitioner contends that because of these facts and because of how long it has taken the government to secure a travel document, his removal is not reasonably foreseeable.  (Dkt. # 7 at 5–6.)  He also argues that his removal to either Ethiopia or Eritrea is not reasonably foreseeable because he is not a citizen of Ethiopia, thereby complicating any effort to secure an Ethiopian travel document, and there is instability in Eritrea.  (Dkt. # 7 at 5–6.)  Finally, Petitioner notes that he has filed a motion to reopen proceedings in Immigration Court.  (Dkts. ## 7 at 2; 7-2.)  In his motion, Petitioner asks the Immigration Court to reopen his immigration proceedings to allow him to present the merits of his asylum, withholding of removal, and Convention Against Torture ("CAT") claims—claims which appear to have legitimate bases upon which Petitioner can seek relief from his removal order.  (Dkts. ## 7 at 2; 7-2 at 8; 1 at 7–8 (describing Petitioner's claims); 1-4 (Petitioner's declaration describing the harm he suffered in Eritrea and

his fears of persecution and torture if he were forced to return)); see  8 U.S.C.

§ 1231(b)(3) (providing that "the Attorney General may not remove [a noncitizen]

to a country if the Attorney General decides that the [noncitizen's] life or freedom

would be threatened in that country because of the [noncitizen's] race, religion,

nationality, membership in a particular social group, or political opinion"); 8 C.F.R.

§ 1208.16 (providing for withholding of removal pursuant to 8 U.S.C.

§ 1231(b)(3)); 8 U.S.C. § 1229b (providing for cancellation of removal of certain

permanent residents who meet certain criteria); 8 U.S.C. § 1158 (providing for a

grant of asylum for certain noncitizens who meet certain conditions).

      Taken together, the length of time between Petitioner's removal order

and his re-detention, the length of time between Respondents' renewed efforts to

secure a travel document for Petitioner and the present day without any further

updates, and Petitioner's apparently viable opportunities to seek relief from

removal, Petitioner has shown that there is good reason to believe that there is no

significant likelihood of removal in the reasonably foreseeable future.  See

Villanueva, 801 F. Supp. 3d at 703 (finding that the petitioner's removal was not

reasonably likely in the foreseeable future where the government had failed to

remove noncitizen for eight years following his order of removal, and there was no

evidence that circumstances had changed to make removal reasonably

foreseeable); see also Shengelia v. Ortega, No. 5:25-CV-1545-JKP, 2025 WL

11

3654368, at *4 (W.D. Tex. Dec. 16, 2025) ("When a petitioner 'likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings, the circumstances 'further demonstrate[ ] that removal is not likely in the reasonably foreseeable future'" (quoting Zavvar v. Scott, No. CV 25-2104-TDC, 2025 WL 2592543, at *8 (D. Md. Sept. 8, 2025)).)

Respondents have failed to rebut this showing.  Federal Respondents point to the ICE Annual Report for Fiscal Year 2024 as evidence that ICE is currently removing noncitizens to both Eritrea and Ethiopia.  (Dkt. # 5 at 7.)  But the mere fact that removal is *possible* does not make removal *significantly likely* in the *reasonably foreseeable* future.  Indeed, the evidence and circumstances before the Court demonstrate that removal is not significantly likely in the reasonably foreseeable future.  Here, Petitioner has no travel documents.  ICE has not been able to procure those travel documents—despite concerted efforts over the course of nigh on eight years and renewed efforts during the past eight months.  Petitioner was ordered removed to Ethiopia or Eritrea, but he is not a citizen of Ethiopia, and he is seeking to reopen his proceedings to present asylum, withholding of removal, and CAT claims with respect to Eritrea.  Respondents detained Petitioner again nearly seven years after his release without providing any justification, (Dkt. # 1 at 2), and in the over four months since they have failed to provide any justification for Petitioner's re-detention.  Under these circumstances, the Court determines that

12

Petitioner's removal is not reasonably foreseeable.  Petitioner's continued detention is therefore unlawful under Zadvydas, and he must be released. Zadvydas, 533 U.S. at 699.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus.  (Dkt. # 1.)[5]  It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Adhanom Debru Tesfamariam from custody, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, to a public place by **no later than 5:00 p.m. on April 17, 2026**.

2. Respondents must **NOTIFY** Petitioner's counsel by email (john@jmblawfirm.com) of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release**.

3. The parties shall **FILE** individual status reports no later than **6:00 p.m. April 20, 2026**, detailing their compliance with this Order.

---

[5] However, any request for attorney's fees in this case is **DENIED**.  "Although Petitioner invokes jurisdiction under 28 U.S.C. §§ 1331 and 2241 and seeks attorney fees, the Court treats the instant action solely as a habeas action under § 2241."  Davila Mercado v. Lyons, No. 5:25-CV-1623-JKP, 2025 WL 3654268, at *7 (W.D. Tex. Dec. 11, 2025).  Here, as in Davila Mercado, Petitioner has not specifically sought any non-habeas relief and has paid only the minimal habeas filing fee.  Accordingly, the Court denies any request for attorney's fees in this case.  Id.; Aldana Perez v. Noem, et. al., No. SA-25-CV-01534-XR, 2025 WL 3654262, at *7 (W.D. Tex. Dec. 5, 2025); Barco v. Witte, 65 F.4th 782, 785 (5th Cir. 2023) (holding that the Equal Access to Justice Act does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions).

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, April 15, 2026.

_____
David Alan Ezra
Senior United States District Judge